Joseph Bialecki and Mary K. Bialecki v. Commissioner. Joseph Bialecki v. Commissioner.
Bialecki v. Commissioner
Docket Nos. 270-63, 271-63
United States Tax Court
T.C. Memo 1964-180; 1964 Tax Ct. Memo LEXIS 156; 23 T.C.M. (CCH) 1070; T.C.M. (RIA) 64180; June 30, 1964
W. Carroll Parks, 618 N. Calvert St., Baltimore, Md., for the petitioners. George K. Dunham for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined a deficiency in income tax against petitioners in Docket No. 270-63 for the year 1959 in the amount of $86.18, and a deficiency against the petitioner in Docket No. 271-63 for the year 1960 in the amount of $43.13. The sole issue presented for decision is whether respondent correctly determined that certain payments made to Joseph Bialecki, a retired policeman, by the Baltimore City Police Department after he had been retired on account of physical disability, were includable in his gross income. The cases were consolidated for trial, briefing, and opinion. Findings of Fact Some of the facts *159 have been stipulated, and the stipulation of facts, together with the exhibits attached thereto, is incorporated into and made a part of our Findings by this reference. Petitioners are husband and wife and reside in Baltimore, Maryland. The returns for the years here in question were filed with the district director of internal revenue at Baltimore, Maryland. Mary K. Bialecki is a party in Docket No. 270-63 solely by virture of having filed a joint return with her husband for the year 1959. The term "petitioner" as hereinafter used will refer to Joseph Bialecki. Petitioner was employed by the Baltimore City Police Department, hereinafter referred to as the Department, having been appointed February 14, 1924, and being retired effective October 4, 1945, on account of physical disability. The controversy involved in these proceedings arises from amounts received by the petitioner from the Department after his separation from it. Petitioner is governed by and received the amounts in controversy under the provisions of section 946 of the Charter and Public Laws of Baltimore City. In 1945, when petitioner was retired from the Department, there was no provision for voluntary retirement. *160 Employees of the Department were retired if they were found to be physically incapable of performing active police duties by the police physicians. If they were retired for physical incapacity and were appointed to the Department prior to June 1, 1943, and had 16 years of service, or if appointed after June 1, 1943, if they had 20 years of service, they received for life one-half of the basic pay of the grade in which they were retired. If the physical incapacity was the result of an injury sustained in the line of duty, then they were retired for life on one-half of the basic pay of the grade in which they were retired without reference to the number of years of service. In 1947 the Charter and Public Laws of Baltimore City were revised to provide for voluntary retirement, without reference to physical incapacity, for employees who had reached age 60 and who had 30 years of service with the Department. Provision was also made for mandatory retirement at age 70. These provisions were in addition to the provisions under the prior law described in the above paragraph. These provisions are incorporated in section 591 of the Charter and Public Laws of Baltimore City. The benefits under *161 the law in effect in 1945, as well as the law in effect in 1947, were paid from a Special Fund set up by the Charter and Public Laws of Baltimore City. The Special Fund is and was made up of contributions of covered employees made while they were on active duty in the amount of 2 percent of their salaries, fines imposed upon policemen, rewards paid the Department, and contributions from the city of Baltimore in an amount necessary to make up the deficit between the monies available in the fund and the pension and retirement benefits paid by the Special Fund. No apportionment is or was made with regard to either the contribution of the City or the contribution of the employees as to the various categories of benefits paid by the Special Fund. During his years of active service the petitioner contributed to the Special Fund and after his separation from active duty with the Department he was paid from the Special Fund. Petitioner was retired from the Department in 1945 at the age of 47 with 21 years and 7 months of service. In 1959, the first of the taxable years involved in those proceedings, petitioner was 61 years of age and if he had remained with the Department he would have *162 had 35 years of service. In the year 1960, the second taxable year involved in these proceedings, the petitioner was 62 years of age and if he had remained with the Department he would have had 36 years of service. If petitioner had not been disabled and if he had continued in his employment as a police officer, he could have voluntarily retired in 1958 and could have received retirement benefits without any actuarial reduction on account of retirement before some later specified age. Petitioner was retired after a physical examination by Department physicians, as provided in section 946 of the Charter and Public Laws of Baltimore City, who certified that he was physically incapable of performing police duties. The parties have stipulated that the Department physicians found that the physical disabilities of the petitioner did not result from any injury sustained in the line of police duty. It is normal procedure for a police officer who is unable to report for duty on account of injury or illness to report his condition to headquarters whereupon he is examined and treated by a Police Department physician. It is also a normal procedure for such injury or illness to be recorded *163 in a medical history maintained for each police officer at headquarters. The medical history of petitioner was as follows: Days
Entered
Cause
To Duty
Lost
12/ 5/24
Infected
12/15/24
10
12/23/24
Inflamed
1/ 6/25
14
5/ 9/25
LaGrippe
5/18/25
9
3/25/26
LaGrippe
5/ 5/26
40
12/ 8/26
LaGrippe
12/11/26
3
2/11/27
LaGrippe
2/17/27
6
12/31/27
LaGrippe
1/ 9/28
9
7/16/28
Int. Indigestion
7/25/28
9
10/16/28
Stye
10/22/28
6
9/17/29
Stye
9/19/29
2
4/12/30
LaGrippe
4/21/30
9
7/22/30
Diarrhoea
7/30/30
8
5/20/31
Int. Indigestion
5/26/31
6
11/ 2/31
LaGrippe
11/ 9/31
7
2/11/32
LaGrippe
2/18/32
7
3/22/32
LaGrippe
4/23/32
31
10/28/33
LaGrippe
11/21/33
24
6/ 9/34
Lacerated Leg
8/ 6/34
58
12/29/34
LaGrippe
1/ 8/35
10
7/29/35
LaGrippe
8/ 6/35
8
2/23/37
Sprain
5/19/37
85
2/ 9/39
Acute LaGrippe
3/ 9/39
28
8/ 3/39
Cholelithiasis
8/11/39
8
8/20/39
Renal Calculus
10/19/39
60
11/ 4/39
LaGrippe
1/16/39
12
7/24/40
Hordeolum right eye
8/ 6/40
13
3/10/41
Influenza
4/ 1/41
22
10/14/41
Influenza
10/23/41
9
9/12/42
Cold
10/ 5/42
23
12/10/42
Cold
12/24/42
14
4/ 8/43
Cold - Sinusitis
4/29/43
21
7/21/43
Myalgia
8/ 4/43
14
11/ 6/43
Influenza 12/1/43
Arthritis
1/11/44
66
3/ 9/44
Sciatica - Cold
4/ 3/44
25
9/28/44
Cold
10/27/44
29
1/30/45
Contusion
2/16/45
17
5/25/45
Sciatica
*164 In 1934 petitioner while on duty fell down some ice-covered steps and hurt his back and head. He was late in making two hourly report calls, but was able to go to work the next day and made no report of any injury to a Police Department physician. On several occasions between 1934 and 1945 petitioner suffered from pains in his back. After he retired in 1945 petitioner was employed once but this job required him to stoop. Since he was only able to stoop for a few minutes, petitioner gave up this job and has not had any other employment. Under the retirement law in force during the time petitioner served on active duty with the Department if a policeman was retired for injury or sickness prior to fulfilling 16 years of service, but such injury or sickness did not arise in the line of police duty, the policy of the Department was to pay the policeman a lump sum of $1,000 and no further benefits. At the time of petitioner's injury in 1934 he had served approximately 10 years with the Department. The petitioner received during each of the years 1959 and 1960 the amount of $2,750.04 from the Special Fund. On the joint return filed with his wife for 1959 and on his separate return for *165 1960 the petitioner treated the amounts received from the Special Fund as excludable "sick pay" and paid no tax thereon. In his notices of deficiencies for the years 1959 and 1960 the respondent included the amounts received from the Special Fund in petitioners' income and determined deficiencies for the years 1959 and 1960 in the amounts of $86.18 and $43.13, respectively. The amounts paid into the Special Fund by the petitioner were recovered through benefits paid out of the Special Fund within 3 years from the commencement of the payment of the benefits to the petitioner and the contributions were all recovered prior to the years here involved. The following is a summary of the retirements from the Department for the years 1956 to 1960, inclusive: REASON
Physically inca-
pable of per-
Injuries sus-
forming
tained in
Year
duty
Duty
Voluntary
Compulsory
Total
1956
67
21
13
1
102
1957
33
15
6
4
58
1958
27
11
7
2
47
1959
22
20
8
1
51
1960
16
7
2
25
Between the years 1956 through 1960 approximately 85 percent of the retirements from the Department were on account of physical disabilities and injuries *166 sustained in the line of duty, and approximately 15 percent of the retirements were voluntary and compulsory. The average age and average years in service at the time of retirement for all categories of retirees from the Department for the years 1956 through 1960 may be summarized as follows: Average
Average
Years in
Year
Age
Service
1956
56
26
1957
56
25
1958
56
25
1959
54
25
1960
56
25
The average age and average years in service at time of retirement for all categories of retirees with the exception of those retired for injuries sustained in the line of duty may be summarized as follows: Average
Average
Years in
Year
Age
Service
1956
57
27
1957
59
28
1958
58
28
1959
57
27
1960
57
26
Opinion KERN, Judge: Respondent contends that the instant cases are indistinguishable from and controlled by the case of William E. Conroy, 41 T.C. 685, on appeal (C.A. 4, May 25, 1964). It is respondent's position that the amounts received by petitioner from the Special Fund are amounts received by him as annuities. As such they would be includable in petitioner's gross income under section 72 of the Internal Revenue Code *167 of 1954, [1] the pertinent parts of which are set out in the margin. Respondent alternatively argues that if the amounts received by petitioner may be characterized as amounts received through accident or health insurance they are attributable to contributions by the employer which were not includable in the gross income of the employee, or are paid by the employer and, as such, they are includable in petitioner's gross income pursuant to sections 104 and 105 of the Internal Revenue Code of 1954, [2] the pertinent parts of which are set out in the margin. *168 Petitioner contends that the amounts received by him from the Special Fund, which have been described in our Findings of Fact, are excludable from gross income as "amounts received" through "accident or health insurance for personal injuries," or "under workmen's compensation acts as compensation for personal injuries or sickness," pursuant to the provisions of sections 104 and 105 of the Internal Revenue Code of 1954. Petitioner specifically refers to sections 104(a) and 105(e). [3]
Petitioner contends that the instant cases are distinguishable from and not controlled by the case of William E. Conroy, supra, for the reasons that the petitioner in the instant cases, unlike the petitioners in the Conroy case, was retired for injuries received in the line of duty and that petitioner in the instant cases, unlike the petitioners in the Conroy case, was retired in 1945, prior to the revision of the Charter and Public Laws of Baltimore City which provided for voluntary *169 and mandatory retirement. We shall first consider petitioner's contention that the amounts here in issue received from the Special Fund constituted compensation to him for his injuries or sickness incurred in the course of his employment under a statute in the nature of a workmen's compensation act, and therefore are not includable in his gross income pursuant to section 104(a)(1) of the Internal Revenue Code of 1954. Section 1.104-1(b), Income Tax Regs., provides as follows: § 1.104-1 Compensation for injuries or sickness. (b) Amounts received under workmen's compensation acts. Section 104(a)(1) excludes from gross income amounts which are received by an employee under a workmen's compensation act (such as the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C., c. 18), or under a statute in the nature of a workmen's compensation act which provides compensation to employees for personal injuries or sickness incurred in the course of employment. Section 104(a)(1) also applies to compensation which is paid under a workmen's compensation act to the survivor or survivors of a deceased employee. *170 However, section 104(a)(1) does not apply to a retirement pension or annuity to the extent that it is determined by reference to the employee's age or length of service, or the employee's prior contributions, even though the employee's retirement is occasioned by an occupational injury or sickness. Section 104(a)(1) also does not apply to amounts which are received as compensation for a non-occupational injury or sickness nor to amounts received as compensation for an occupational injury or sickness to the extent that they are in excess of the amount provided in the applicable workmen's compensation act or acts. See, however, §§ 1.105-1 through 1.105-5 for rules relating to exclusion of such amounts from gross income. If petitioner was retired in 1945 "by reason of disability incurred in the line of duty, rather than because of service of the prescribed number of years on the police force," then the amounts here in issue would not be includable in his gross income. William L. Neill, 17 T.C. 1015, 1017. See also Doogan v. United States, 154 F. Supp. 703; Frye v. United States, 72 F. Supp. 405. But, if the retirement was for a disability which *171 occurred during the period of employment and it is not shown that "such disability arose out of and was incurred in the taxpayer's regular performance of his duties," the amounts received are not excludable from gross income as amounts received under workmen's compensation acts as compensation for personal injuries or sickness. Charles F. Brown, 25 T.C. 220, 222. See also Allen v. Spencer, 214 F. 2d 205; Simms v. Commissioner, 196 F. 2d 238, affirming 17 T.C. 1; George E. Murphy, 20 T.C. 746; Mayberry v. United States, an unreported case ( S.D. Ohio 1962, 9 A.F.T.R. 2d 1798). Petitioner testified that he was injured while on duty in 1934 but that he did not retire from the Department until 1945. Petitioner's testimony was vague, ambiguous, and insufficient to carry his burden of proof of demonstrating that he was retired from the Department on account of an injury sustained in the line of duty. Petitioner's medical history while serving as a police officer, which was introduced as an exhibit by petitioner, shows that he suffered from sciatica and arthritis, among other ailments, both of which could have *172 caused his disability and neither of which can be presumed to have been incurred in the line of duty. Petitioner did not offer the testimony of any of the physicians who certified that he retired for physical disability, and no medical testimony in general was offered to establish that petitioner's physical disability was sustained in the line of police duty. Moreover, the parties have stipulated that "[the] Department physicians found that the physical disabilities of the petitioner did not result from any injury sustained in the line of police duty." On the basis of the record before us we are unable to conclude that the amounts in issue were paid to petitioner as compensation for personal injuries or sickness sustained in the line of duty within the meaning of section 104(a)(1) of the Internal Revenue Code of 1954. It appears to us that the amounts in issue were paid to petitioner from the Special Fund "by reference to petitioner's length of service" with the Department which do not qualify under section 104(a)(1) even though petitioner was retired on account of physical disabilities. We do not understand petitioner to make a contention that the amounts *173 in question are not includable in his gross income pursuant to section 105(c)(1) of the Internal Revenue Code of 1954. That section provides that although amounts are received by an employee through accident or health insurance and are either attributable to contributions by the employer which are not includable in the gross income of the employee, or are paid by the employer, such amounts are not includable in gross income to the extent they constitute payment for the permanent loss or loss of use of amember or function of the body, or the permanent disfigurement of the employee. Petitioner has not shown that he suffered a permanent loss or loss of use of a member or function of the body, or a permanent disfigurement, nor has he shown that the payments received from the Special Fund were for such purposes. We shall next consider petitioner's contention that this case is distinguishable from the Conroy case because the petitioner herein was retired in 1945 pursuant to a law not considered by us in the Conroy case, which made no provision for voluntary or mandatory retirement. In the Conroy case we held that if the amounts received by petitioners therein were, *174 as petitioners contended, received through health or accident insurance, they were paid by the employer or attributable to contributions by the employer which were not includable in the gross incomes of the employees and therefore includable in gross income pursuant to section 105(a) of the Internal Revenue Code of 1954. In the Conroy case we also found, but did not hold, that the amounts there in issue constituted annuities taxable under section 72 of the Internal Revenue Code of 1954. During the years here in issue amounts were disbursed from the Special Fund for retirement pensions to individuals who had voluntarily retired, to individuals who were compelled to retire, for benefits to retirees who were certified to be physically incapable of performing police duties, and for benefits to retirees who had sustained injuries in the line of duty. There is no proof in the instant cases, as there was none in the Conroy case, "that any provision of the plan under which the special fund operated or any law or ordinance which created it prescribed that 'the accident or health benefits are provided in whole or in part by employee contributions *175 and the portion of employee contributions to be used for such purpose.'" The parties herein have stipulated that no apportionment was made with regard to either the contribution of the City or the contribution of the employees as to the various categories of benefits paid to the Special Fund. It must therefore be presumed, pursuant to section 1.72-15(c)(2), Income Tax Regs., that none of the employee contributions are used to provide accident or health benefits. The evidence of record does not show otherwise. Accordingly, we reach the same conclusion as in the Conroy case that the amounts here in issue which were received through accident or health insurance, as contended by petitioner, are attributable entirely to contributions of the employer and are not excludable from petitioner's gross income pursuant to sections 104 and 105 of the Internal Revenue Code of 1954. Petitioner does not contend that the amounts received are excludable from his gross income pursuant to section 105(b) of the Internal Revenue Code of 1954. We have hereinabove concluded that the amounts in issue are not excludable from petitioner's *176 gross income pursuant to section 105(c) of the Internal Revenue Code of 1954. In William E. Conroy, supra, we considered section 105(d) of the Internal Revenue Code and found it to be inapplicable to the facts of that case. In the instant cases and in the Conroy case the parties stipulated that the average age and years in service for all categories of retirees from the Department were less than the ages of the petitioners during the taxable years and less than their years of service if they had remained in the Department. Although petitioner was retired from the Department in 1945 when there was no provision for voluntary or mandatory retirement, there was such a provision from 1947 to and including the taxable years which applied to the same Special Fund from which petitioner was paid. If petitioner had not been disabled and if he had continued to be employed as a police officer, he could have voluntarily retired before the taxable years before us. Accordingly, pursuant to section 1.1o5-4(a)(3)(i), Income Tax Regs., petitioner in the instant cases was not "absent from work" during the taxable years *177 because, having reached the normal age at which he would have had the right to receive retirement benefits based on service from the Special Fund, he was not expected to work. "Retirement age" as used in section 1.105-4(a)(3)(i), Income Tax Regs., is deemed to be The lowest age specified in the appropriate written employees' pension or annuity plan at which the employee, had he not been disabled and had he continued in such employment, would have had the right to retire without the consent of the employer and receive retirement benefits based on service to date of retirement computed at the full rate set forth in the plan, i.e., without actuarial or similar reduction because of retirement before some later specified age, provided, however, that such retirement age corresponds with the employer's actual practice and is reasonable in view of all the pertinent facts and circumstances; * * *. [Rev. Rul. 57-76, 1957-1 C.B. 66, 67, cited with approval in William L. Winter, supra.] Petitioner has not shown that had he not been disabled and had he voluntarily retired in 1958 he would have received greater benefits from the Special *178 Fund. We conclude that section 105(d) of the Internal Revenue Code of 1954 is not applicable to the facts of the instant cases. Section 1.72-15, Income Tax Regs., is applicable to payments received by an employee after he reaches retirement age. See section 1.105-4(a)(3)(i), Income Tax Regs. Example (1) of section 1.72-15(f), Income Tax Regs., provides amounts received by an employee under a disability pension, which are attributable to the contributions which are attributable to the contributions of an employer, are excludable from the employee's gross income under section 105(d) of the Internal Revenue Code of 1954, until he reaches the normal retirement age under the plan. Thereafter, the payments received by the employee are taxable as annuities under section 72 of the Internal Revenue Code of 1954. In the example the amounts received by the employee during the first 3 years after he attained normal retirement age exceeded his contributions. Therefore he was entitled to exclude under section 1.72-13, Income Tax Regs. *179 , the entire amount of all payments that he received as an annuity after attaining normal retirement age until such amounts equaled his contributions to the plan. Subsequent payments received in excess of his contributions to the plan were includable in his gross income. Petitioner does not contend that if the amounts received during the taxable years constitute annuities they are amounts excludable from gross income as a recovery of the petitioner's contributions to the Special Fund received after petitioner obtained the normal retirement age. There is no evidence of record which would allow us to make any allowances to petitioner under the regulations. The parties have stipulated and we have found as a fact that the amounts paid into the Special Fund by the petitioner were recovered through benefits paid out of the Special Fund within 3 years from the commencement of the payment of the benefits to the petitioner, and the contributions were all recovered prior to the years here involved. We conclude that these cases are not distinguishable from and that they are controlled by William E. Conroy, supra. We there found that the amounts received from the Special Fund were *180 includable in the petitioners' gross incomes under either section 72 or section 105(a), but in view of the petitioners' argument that the amounts they received were received through health or accident insurance and that such amounts were not includable in their gross incomes as annuities under section 72 of the Internal Revenue Code of 1954, we limited our decision and held that the amounts received were includable in petitioners' gross incomes under section 105(a) of the Internal Revenue Code of 1954. Although the amounts here in issue would be includable in petitioner's gross income, on the basis of this record, under either section 72 or section 105(a), we limit our decision to section 105(a) of the Internal Revenue Code of 1954. Decisions will be entered for the respondent. Footnotes
1. SEC. 72. ANNUITIES; CERTAIN PROCEEDS OF ENDOWMENT AND LIFE INSURANCE CONTRACTS. (a) General Rule for Annuities. - Except as otherwise provided in this chapter, gross income includes any amount received as an annuity (whether for a period certain or during one or more lives) under an annuity, endowment, or life insurance contract. * * *
(d) Employees' Annuities. - (1) Employee's contributions recoverable in 3 years. - Where - (A) part of the consideration for an annuity, endowment, or life insurance contract is contributed by the employer, and (B) during the 3-year period beginning on the date (whether or not before January 1, 1954) on which an amount is first received under the contract as an annuity, the aggregate amount receivable by the employee under the terms of the contract is equal to or greater than the consideration for the contract contributed by the employee, then all amounts received as an annuity under the contract shall be excluded from gross income until there has been so excluded (under this paragraph and prior income tax laws) an amount equal to the consideration for the contract contributed by the employee. Thereafter all amounts so received under the contract shall be included in gross income. * * *
(f) Special Rules for Computing Employees' Contributions. - In computing, for purposes of subsection (c)(1)(A), the aggregate amount of premiums or other consideration paid for the contract, for purposes of subsection (d)(1), the consideration for the contract contributed by the employee, and for purposes of subsection (e)(1)(B), the aggregate premiums or other consideration paid, amounts contributed by the employer shall be included, but only to the extent that - (1) such amounts were includible in the gross income of the employee under this subtitle or prior income tax laws; or (2) if such amounts had been paid directly to the employee at the time they were contributed, they would not have been includible in the gross income of the employee under the laws applicable at the time of such contribution. ↩
2. SEC. 104. COMPENSATION FOR INJURIES OR SICKNESS. (a) In General. - Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include - (1) amounts received under workmen's compensation acts as compensation for personal injuries or sickness; (2) the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness; (3) amounts received through accident or health insurance for personal injuries or sickness (other than amounts received by an employee, to the extent such amounts (A) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (B) are paid by the employer); and (4) amounts received as a pension, annuity, or similar allowance for personal injuries or sickness resulting from active service in the armed forces of any country or in the Coast and Geodetic Survey or the Public Health Service, or as a disability annuity payable under the provisions of section 831 of the Foreign Service Act of 1946, as amended (22 U.S.C. 1081; 60 Stat. 1021). * * *
SEC. 105. AMOUNTS RECEIVED UNDER ACCIDENT AND HEALTH PLANS. (a) Amounts Attributable to Employer Contributions. - Except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (2) are paid by the employer. (b) Amounts Expended for Medical Care. - Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include amounts referred to in subsection (a) if such amounts are paid, directly or indirectly, to the taxpayer to reimburse the taxpayer for expenses incurred by him for the medical care (as defined in section 213(a)) of the taxpayer, his spouse, and his dependents (as defined in section 152). (c) Payments Unrelated to Absence from Work. - Gross income does not include amounts referred to in subsection (a) to the extent such amounts - (1) constitute payment for the permanent loss or loss of use of a member or function of the body, or the permanent disfigurement, of the taxpayer, his spouse, or a dependent (as defined in section 152), and (2) are computed with reference to the nature of the injury without regard to the period the employee is absent from work. (d) Wage Continuation Plans. - Gross income not include amounts referred to in subsection (a) if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness; but this subsection shall not apply to the extent that such amounts exceed a weekly rate of $100. In the case of a period during which the employee is absent from work on account of sickness, the preceding sentence shall not apply to amounts attributable to the first 7 calendar days in such period unless the employee is hospitalized on account of sickness for at least one day during such period. If such amounts are not paid on the basis of a weekly pay period, the Secretary or his delegate shall by regulations prescribe the method of determining the weekly rate at which such amounts are paid. (e) Accident and Health Plans. - For purposes of this section and section 104 - (1) amounts received under an accident or health plan for employees, and (2) amounts received from a sickness and disability fund for employees maintained under the law of a State, a Territory, or the District of Columbia. shall be treated as amounts received through accident or health insurance. (f) Rules for Application of Section 213. - For purposes of section 213(a) (relating to medical, dental, etc., expenses) amounts excluded from gross income under subsection (c) or (d) shall not be considered as compensation (by insurance or otherwise) for expenses paid for medical care.↩
3. Petitioner has filed no brief. His contentions are spelled out from the petition and the opening statement made by petitioner's counsel at the time of the trial of these cases.↩