Frederick W. Rembold and Helena F. Rembold v. Commissioner.
Rembold v. Commissioner
Docket No. 3760-63.
United States Tax Court
T.C. Memo 1966-7; 1966 Tax Ct. Memo LEXIS 275; 25 T.C.M. (CCH) 19; T.C.M. (RIA) 66007; January 11, 1966
*275 Petitioner, a former member of the Baltimore City Police Department, was retired on account of physical disability in 1947 and received payments through the taxable years involved from a Special Fund made up of certain fines and rewards, contributions by member employees, and appropriations by the city. Held, the payments are not excludable as "accident or health insurance" or as "amounts received under workmen's compensation acts" within the meaning of secs. 104 and 105 of the Internal Revenue Code of 1954. W. Carroll Parks, 618 N. Calvert St., Baltimore, Md., for the petitioners. George K. Dunham, for the respondent. TANNENWALD
Memorandum Findings of Facts and Opinion TANNENWALD, Judge: Respondent determined deficiencies in petitioners' income tax for the years 1960 and 1961 in the amounts of $305.61 and $399.38, respectively. The sole issue is whether respondent correctly determined that certain payments made to Frederick W. Rembold, a retired policeman, in 1960 and 1961, after he had been retired on account of physical disability, were includable in his gross income. Findings of Fact Some of the facts have been stipulated and are incorporated herein by reference and found accordingly. During the taxable years 1960 and 1961, petitioners were husband and wife residing in Pasadena, Maryland, and they timely filed their joint returns for those years with the district *277 director of internal revenue, Baltimore, Maryland. Any reference herein to petitioner shall be in reference to Frederick W. Rembold, Helena F. Rembold being a party to this proceeding only by reason of having filed joint returns with him. Petitioner was employed by the Baltimore City Police Department (hereinafter sometimes referred to as the "Department") as a policeman from February 21, 1924 until his retirement effective July 3, 1947. At the time of petitioner's retirement, section 591 of the Charter and Public Laws of Baltimore City provided for several ways in which an employee could be retired from the Department. There was a mandatory requirement for retirement at age seventy. Employees could voluntarily retire at age sixty if they had 30 years of service. In addition, employees could be retired if after a physical examination by the police physicians they were found to be physically incapable of performing police duty. If they were appointed prior to June 1, 1943 and had 16 years of service, or, if appointed after June 1, 1943, they had 20 years of service, they would receive one-half of the current base pay of the grade in which they were retired, the same as was received *278 by voluntary or mandatory retirees. If the physical incapacity for which an employee was retired resulted from an injury sustained in the line of duty, then he would be retired on one-half base pay without reference to his years of service. The benefits paid to the retirees under Section 591 of the Charter and Public Laws of Baltimore City were paid from a Special Fund set up by the Charter and Public Laws of Baltimore City. This Special Fund is and was made up of contributions of covered employees made while they are on active duty in the amount of 2 percent of their salaries; fines imposed upon policemen; rewards paid the Department; and contributions from the City of Baltimore in an amount necessary to make up the deficit between the monies available in the Special Fund and the pension and retirement benefits paid by the Special Fund. No apportionment is or was made with regard to either the contribution of the City or the contribution of the employees as to the various categories of benefits paid by the Special Fund. During his years of active service the petitioner contributed to the Special Fund and after his retirement from active duty with the Department he was paid from *279 the Special Fund. On December 23, 1925, petitioner was shot in the left cheek while on duty and, as a result, missed 22 days of active duty. On April 12, 1942, petitioner was beaten and kicked about the head and body while attempting to make an arrest. He was treated for a contusion of the left knee and a slight laceration of the mucous membrane inside the left cheek. As a result of the beating, he missed 17 days of active duty. Petitioner was retired from the Department on July 3, 1947 at the age of fifty with 23 years and 4 months of service with the Department. In 1960, the first of the years involved in this proceeding, petitioner was 64 years of age and if he had remained with the Department he would have had 36 years of service. In 1961, the second taxable year involved in this proceeding, the petitioner was 65 years of age and if he had remained with the Department he would have had 37 years of service. Petitioner was retired after a physical examination by Department physicians, as provided by Section 591 of the Charter and Public Laws of Baltimore City, who certified that he was physically incapable of performing police duties. The Department physicians failed to find *280 that the physical disabilities of the petitioner resulted from injury sustained in the line of police duty. The certificate of medical examination issued by the police physicians upon which petitioner's retirement was based stated: Patient has some myocardial changes: B.P. 160/110 - Pulse 92: Has been beaten over the head. Is extremely hard of hearing. Petitioner was not in fact retired for physical disability arising out of or incurred in the performance of his duties as a police officer. Petitioner received during the years 1960 and 1961 the amounts of $2,750.04 and $2,887.56, respectively, from the Special Fund. On their returns for the years 1960 and 1961, petitioners omitted these amounts and paid no taxes thereon. In his notice of deficiency for the years 1960 and 1961, respondent included the amounts received from the Special Fund in petitioners' income and determined deficiencies for the years 1960 and 1961 in the amounts of $305.61 and $399.38, respectively. The amounts paid into the Special Fund by the petitioner were recovered through benefits paid out of the Special Fund within three years from the commencement of the payment of the benefits to the petitioner *281 and his contributions were all recovered prior to the years here involved. The following is a summary of the retirements from the Baltimore Police Department for the years 1956 through 1960: Reason
Physically
incapa-
Injuries
ble of
sus-
perform-
tained
ing police
in line
Volun-
Compul-
Year
duty
of duty
tary
sory
Total
1956
67
21
13
1
102
1957
33
15
6
4
58
1958
27
11
7
2
47
1959
22
20
8
1
51
1960
16
7
2
0
25
The average age and average years in service at the time of retirement for all categories of retirees from the Department and for all categories of retirees from the Department with the exception of those retired for injuries sustained in the line of duty may be summarized as follows: All categories
of retirees except
those retired for
All categories
injuries sustained
of retirees
in line of duty
Average
Average
Average
years in
Average
years in
Year
age
service
age
service
1956
56
26
57
27
1957
56
25
59
28
1958
56
25
58
28
1959
54
25
57
27
1960
56
25
57
26
Opinion Petitioner *282 initially contends that the payments in question represent "amounts received through accident or health insurance for personal injuries" and are attributable to the contributions made by him to the Special Fund; he therefore maintains that such amounts are not includable in gross income by virtue of sections 104(a)(3) and 105(a) of the Internal Revenue Code of 1954. This precise question has already been decided by this Court adversely to petitioner's position in three cases involving Baltimore policemen who had retired under the same circumstances as petitioner. William E. Conroy, 41 T.C. 685 (1964), affirmed per curiam 341 F. 2d 290 (C.A. 4, 1965); John H. Schmitt, T.C. Memo. 1965-37; Joseph Bialecki, T.C. Memo 1964-180. Petitioner argues alternatively that the payments are excluded under section 104(a)(1) of the Internal Revenue Code of 1954 as "amounts received under workmen's compensation acts as compensation for personal injuries." He maintains that he was in fact retired for physical disability occasioned by injuries suffered in the performance of his duties as a policeman. The *283 record does not support this position. The certificate of medical examination upon which petitioner was retired simply indicates the conditions of physical disability which occasioned retirement; it contains no statement that the disability was the direct result of an injury sustained in the discharge of petitioner's duty as a policeman, although space was provided on the form for such a statement. The injuries set forth in the 1925 and 1942 reports are not in and of themselves of such a nature as reasonably to require the conclusion that they produced those conditions. Even a letter written by Dr. O'Connor, which petitioner produced at the trial and which, in the absence of an opportunity for cross-examination by respondent, has little, if any, probative value, merely states that in Dr. O'Connor's opinion petitioner "should have been retired for injuries sustained in the line of duty." [Emphasis added.] Certainly this letter, written almost sixteen years after petitioner's retirement, does not sustain the contention that petitioner was retired for such injuries, particularly since Dr. O'Connor was only one of four police physicians who signed the certificate of medical examination. *284 Under these circumstances, we are far from convinced that petitioner was retired on account of physical disability occasioned by injuries suffered by him in the performance of his duties. Gerald W. McDonald, 33 T.C. 540 (1959); cf. Joseph B. Simms, 17 T.C. 1 (1951), affd. 196 F. 2d 238 (C.A.D.C. 1952). In view of our conclusion, we need not decide whether the Baltimore City law involved herein qualifies as a "workmen's compensation act" within the meaning of section 104(a)(1) or, if it does so qualify, what portion of the payments received by petitioner should properly be characterized as such compensation. Compare William L. Neill, 17 T.C. 1015 (1951), with Charles F. Brown, 25 T.C. 220 (1955). We note also that even if petitioner might have been entitled to compensation for a service-connected disability, under another applicable workmen's compensation act, the record herein contains no evidence as to what portion, if any, of the payments received herein was not in excess of the amounts provided under such act. See sec. 1.104-1(b), Income Tax Regs.
Decision will be entered for the respondent. *285